UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 4:05-CR-31-002 |
| v. ) | |
| ) | Judge Curtis L. Collier |
| ) | |
| ANDRE WILLIAMS, ) | |
| ) | |
| Defendant. ) | |

# **MEMORANDUM**

On March 10, 2006, the Court sentenced Defendant Andre Williams ("Defendant" or "Williams") to a term of incarceration of 48 months and ordered Williams to pay $67,013.87 in restitution. Williams entered a guilty plea on November 3, 2005 to a count of conspiracy to possess and utter counterfeit securities in violation of 18 U.S.C. § 371. Williams's sentencing hearing initially was set for February 3, 2006 but because of concerns of the Court Williams may have used minors to commit the offense and had relied upon a criminal livelihood for his support, the Court continued the sentencing hearing until March 10, 2006.[1] Based upon the evidence adduced at the hearing, the nature and circumstances of the offense and Williams's unique personal history,

---

[1] The Court specifically explained to counsel it thought an upward departure from the Guidelines or a non-Guideline sentence might be appropriate because of the use of a minor in the offense and the possibility Defendant supported himself with criminal activities. The initial PSR in its calculation of the Guidelines did not take into account the possible use of a minor. Counsel had not been provided notice of the possibility of an upward departure or a non-Guideline sentence, so the Court wanted to make it clear there was a possibility of a sentence longer than that indicated in the initial Guideline calculation of the PSR. The Court's explanation served as notice of the possibility of an upward departure. Fed. R. Crim. P. 32(h); *United States v. Kuhn*, 345 F.3d 431, 436 (6th Cir. 2003). After some discussion of the matter, counsel for Williams requested a continuance of the hearing, which request was granted.

background and characteristics, the Court determined, pursuant to *United States v. Booker,* 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), and 18 U.S.C. § 3553(a), a sentence within the United States Sentencing Guidelines ("Guidelines"), albeit with an upward departure, would best serve the interest of justice. This memorandum will set out and elaborate upon the Court's reasoning for the particular sentence it imposed.

## I.  FACTUAL BACKGROUND

The following is a summary of the facts taken from Defendant's Presentence Report ("PSR"), the factual basis contained in Defendant's plea agreement (Court File No. 20), and the evidence presented at the sentencing hearing.

### A.  Defendant's Relevant Personal History and Background

Defendant is a 38-year-old male from Detroit, Michigan. He has lived in Michigan most of his life but for brief periods of time he has also lived in New York and Tennessee. According to the PSR, Defendant only attended school through the ninth grade but he eventually obtained a general education diploma ("GED") while incarcerated in Michigan. He has an extensive history of alcohol abuse and has experimented with several illicit drugs, including cocaine hydrochloride, cocaine base, marijuana, ecstasy, and angel dust. Defendant has almost no work history. The Social Security Administration reports Defendant earned $653 in 1995 but has no other records of Defendant earning any income.

Defendant has several prior convictions. In 1991 Defendant was convicted of larceny and driving on a revoked license. In 1995, Defendant was convicted of (1) possessing less than 50 grams of cocaine with intent to distribute and sentenced to lifetime probation; and (2) an ordinance

violation and sentenced to 75days imprisonment.[2]  Later, in 2000, Defendant was convicted of failing to return rented property valued over $100 and sentenced to one year of probation.  In addition to these prior convictions, Defendant has been arrested twice on theft charges, once for possession of cocaine, and once for felonious assault.  These arrests occurred from 1989 through 2001.  As of the time the PSR was written, Defendant's records reflected one pending charge related to theft.

### B. Facts of Defendant's Conviction

Defendant, along with Spring Langford ("Langford"), a person known as "Gee", Maurice Crawford ("Crawford"), Jessica Bowen ("Bowen"), Talisha Brown ("Brown"), Christy Coleman ("Coleman"), and Cara Rowe ("Rowe"), was involved in a scheme to obtain money from financial institutions by cashing counterfeit company checks.  Defendant recruited others to participate in the scheme and he specifically recruited Langford and Coleman to both participate in the scheme and to help recruit others.  One of the recruitment scripts used by Defendant represented to the person being recruited he had a friend who was in bankruptcy and the friend was going to lose his company.  The recruitment script went on to explain this person needed others to cash checks in order to take money out of the company and preserve the company's assets.

The individuals recruited into the scheme would provide Defendant with their personal information that would enable Defendant or one of his co-conspirators to complete the fraudulent checks using the personal information on the check.  Then, Defendant would distribute the fraudulent checks, directly or indirectly, to the members of the conspiracy who cashed the checks.

---

[2] According to Defendant, the judgment was amended to reflect a reduced sentence of 43 days.

3

Sometimes Defendant would accompany his co-conspirators to cash the fraudulent checks but other times the co-conspirators would cash checks without Defendant being present. Typically the checks would be written in the amount of $1,500. The person cashing the check would retain about $250, and the remaining money would be given to Defendant.

At the sentencing hearing, Brown, who was 17 years old when she was recruited to participate in the scheme, testified Defendant informed her why they were cashing the checks and wrote down her name, phone number, address, and driver's license number. Brown is a small, very youthful-looking young person. Although she testified she was 19 years old at the time she testified at the sentencing hearing, she appeared to be much younger. If the Court had to guess Brown's age on the day of sentencing, which was almost two years after she participated in the scheme, it would have guessed she was about 14 or 15 years old. Brown knew Defendant by his nickname of Drago. Brown testified two of her friends, who were also under 18 years old and in high school at the time, were involved in the scheme as well. Defendant recruited these two minors. These two juveniles were asked to cash some checks on a weekday but declined to do so because they had to be in school. Defendant knew of the juvenile status of these three individuals and he attempted to use these three individuals to utter counterfeit securities.

The co-conspirators uttered counterfeit checks at AEDC Federal Credit Union ("AEDC") branches in Shelbyville, Tennessee on August 16, 2004; in Tullahoma, Tennessee on August 16, 2004; in Winchester, Tennessee on August 16, 2004; in Manchester, Tennessee on August 16, 2004; and again in Winchester on August 17, 2004. On one occasion while Defendant was in the company of Langford at an AEDC branch, Defendant observed Brown cashing one of the fraudulent checks.

On August 18, 2004 Thompson and Langford attempted to cash some fraudulent checks in

4

Murfreesboro, Tennessee but were arrested while doing so. Defendant was arrested and charged about one month later.

## II. DISCUSSION

### A. General Methodology

The general methodology the Court now uses, following the instructions of *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), in determining sentences is set out in *United States v. Phelps*, 366 F. Supp. 2d 580, 584-94 (E.D. Tenn. 2005). The Supreme Court in *Booker* noted "[t]he district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." *Booker,* 543 U.S. at 264. Accordingly, first, the Court will apply the relevant Guidelines provisions. This includes calculating the advisory Guidelines range and applying established departure law and procedures. The Court also will consider the collective judgments of the Sentencing Commission and Congress reflected by the resulting Guidelines range.

The Court next will look to the sentencing purposes Congress requires it to consider, listed in § 3553(a)(2):

> [T]he need for the sentence imposed–
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2). Section 3553(a) further directs courts to consider: (i) "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. §

5

3553(a)(1); (ii) "the kinds of sentences available," 18 U.S.C. § 3553(a)(3); (iii) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6); and (iv) "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7).

Finally, the Court will determine a reasonable sentence in accordance with §3553(a), including but not limited to considering the relevant Guidelines range. *See Booker*, 543 U.S. at 264. The overriding principle is to impose a sentence that is "sufficient, but not greater than necessary, to achieve the statutory purposes of sentencing." 18 U.S.C. § 3553(a). In other words, the Court's sentence must strive to achieve the purposes of § 3553(a) but not be harsher than what is necessary to meet the statutory goals.

    **B.**    **Guideline Calculation**

The first step in sentencing is to properly compute the Guidelines applicable to the case. The PSR computes Defendant's Guideline range as follows:

    **1.**    **Offense Level Calculation**

Williams's base offense level, pursuant to the United States Sentencing Guideline Manual ("USSG") § 2B1.1(a)(2), was six. Since the total amount of loss exceeded $30,000, six additional levels were added. USSG § 2B1.1(b)(1)(D). The offense level was then increased another four levels because Defendant was an organizer or leader of the fraudulent check scheme, which involved five or more people. USSG § 3B1.1(a). Finally, two more levels were added because Defendant directed a juvenile under the age of 18 to cash fraudulent checks, resulting in a total offense level

6

of 15.[3] USSG § 3B1.4.

### 2. Defendant's criminal history

The PSR calculated Williams's criminal history category as IV. This category was calculated based upon the following:

- two points for the 1995 conviction of possession of cocaine pursuant to USSG § 4A1.1(b);
- two points for the 1995 conviction of an ordinance violation pursuant to USSG 4A1.1(b);
- one point for the 2000 conviction of failing to return property pursuant to USSG § 4A1.1(c); and
- two points for committing the instant offense while on probation for another offense pursuant to USSG § 4A1.1(d).

Thus, with seven criminal history points, under the Sentencing Table, Williams's criminal history category was IV. USSG Chapter 5, Part A.

### 3. Guideline Range Before Upward Departure

Williams's Guideline range, with a criminal history category of IV and a total offense level of 15, was 30-37 months imprisonment. USSG Chapter 5, Part A. However, as discussed immediately below, his Guideline range increased as a result of the Court's decision to make an upward departure.

### 4. Guided Upward Departure

The Guidelines authorize a district court to increase a defendant's offense level by two levels when "the defendant used or attempted to use a person less than eighteen years of age to commit the offense . . . ." USSG § 3B1.4. Application Note Three of the Commentary to § 3B1.4 indicates "[i]f the defendant used or attempted to use more than one person less than eighteen years

---

[3]The initial PSR did not apply § 3B1.4. After the continuance was granted, the PSR was revised and this adjustment was made.

7

of age, an upward departure may be warranted." USSG § 3B1.4, cmt. n.3; *see United States v. Camacho*, 2000 WL 534231, at * 1 (2d Cir. May 2, 2000) (affirming a four-level adjustment where two minors were involved). Relying on Application Note Three, since Defendant helped recruit three individuals he knew to be juveniles and then used or attempted to use them to utter counterfeit securities, the Court added four levels in addition to the two levels already added under § 3B1.4 for use of a minor to commit a crime, or two levels for each minor Defendant involved.

The language in Application Note Three serves as specific guidance to sentencing courts in circumstances where more than one minor is involved.[4] Thus, when the Court relied on Application Note Three to make an upward departure, it made a "guided departure." See *United States v. Simmons*, 368 F.3d 1335, 1338-40 (11th Cir. 2004) (explaining a guided departure is one specifically provided for in the Guidelines and an unguided departure is one based on a factor not expressly discussed by the Guidelines).

Although Note Three suggests an upward departure, it does not state the degree of departure. *See* USSG § 3B1.4, cmt. n.3. That is left to the discretion of the sentencing court. In some circumstances an upward departure of just one level might be appropriate. In other circumstances, an upward departure of two or more levels might be warranted. The Court does not think mechanically adding two levels for each minor is always appropriate. If there were a large number

---

[4] The Guidelines explain:

> It is important to note that the guidelines refer to three different kinds of departure. . . . The second kind involves instances in which the guidelines provide specific guidance for departure, by analogy or by other numerical or non-numerical suggestion. . . . The Commission intends such suggestions as policy guidance for the courts. The Commission expects that most departures will reflect the suggestions . . . .

USSG § 1A1.1(4)(b).
8

Case 4:05-cr-00031   Document 34   Filed 04/17/06   Page 8 of 13   PageID #: 8

of minors involved in a case, at some point no additional levels should be added because the sentence would become disproportionate to the crime. Moreover, a sentencing court should consider whether the resulting Guideline level is appropriate in contemplating each additional increase. In this case, considering Defendant's direct efforts in recruitment of the minors, the harm to their futures, his supervision of their efforts, and the sophistication of the recruitment effort, the Court concluded an increase of four levels, or two levels for each additional minor, was appropriate pursuant to Application Note Three to § 3B1.4.

In sum, pursuant to § 3B1.4, since Defendant used or attempted to use a minor to commit the offense, his offense level was increased by two levels. Then, because Defendant used or attempted to use a total of three minors, the Court increased Defendant's offense level another four levels, for a total of six levels, or two levels per minor. Defendant's resulting Guideline range was 46-57 months imprisonment.

### C. Section 3553(a) Considerations

In addition to the Guidelines themselves, the factors the Court must now consider are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a)(1);
(2) the kinds of sentences available, § 3553(a)(3);
(3) the sentencing range established for the applicable category of offense committed by the applicable category of defendant, § 3553(a)(4);
(4) the pertinent Sentencing Commission policy statements, § 3553(a)(5);
(5) the need to avoid unwarranted sentencing disparities, § 3553(a)(6);
(6) the need to provide restitution to victims, § 3553(a)(7); and
(7) the need for judges to impose sentences that reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and effectively provide the defendant with needed educational or vocational training and medical care, § 3553(a)(2).

The United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") recently held a sentence within the Guideline range is presumed to be reasonable. *United States v. Williams*, 436

F.3d 706, 708 (6th Cir. 2006). However, the Sixth Circuit does not automatically accord a presumption of unreasonableness to a sentence outside the Guideline range. *United States v. Foreman*, 436 F.3d 638, 644 (6th Cir. 2006) ("*Williams* does not mean that a sentence outside of the Guidelines range—either higher or lower—is presumptively *un* reasonable. It is not."). For appellate review such a sentence must be explained by the district court and must comply with the § 3553(a) factors. *Williams*, 436 F.3d at 709; *United States v. Kirby*, 418 F.3d 621, 626 (6th Cir. 2005).

Before sentencing Defendant, the Court considered the factors listed in § 3553(a). The Court will now highlight several of the factors it considered before it imposed a sentence of 48 months incarceration and $67,013.87 in restitution.

### 1. Nature and Circumstances of the Offense

The offense here was a sophisticated one that involved some knowledge of computers, company check-creation computer software, company check-creation practices, and bank check-cashing practices. It is the type of crime that is extremely difficult to detect by victims when first launched. Defendant was an experienced criminal who was persuasive in involving others. Although he may not have been the leader and organizer at the very top of the fraudulent check-cashing scheme, he obviously occupied a trusted and significant position in the hierarchy of the scheme. Defendant would recruit others and expect those he recruited to bring others into the conspiracy. Those bearing the greatest risk, the check cashers, reaped the smallest rewards, keeping just $250 of the proceeds while turning over the major portion to Defendant. Although he may not have created the false checks by himself, he at least caused the checks to be made. Further, he knowingly recruited and used minors to cash counterfeit checks. Defendant would gather his co-

10

conspirators' personal information such as addresses and phone numbers so the fraudulent checks could be made.

## 2. History and Characteristics of Defendant and Protecting the Public

Looking at Defendant's history and characteristics, one sees a person who dropped out of high school in the ninth grade. Although he eventually achieved a GED, there is no record of Defendant pursuing any additional formal education or attempting to learn any skills. Defendant has been in trouble with the law throughout his adult life. He has several prior convictions over the course of many years. With a slight exception in 1995, Defendant has no record of employment with the Social Security Administration. From this lack of a legitimate means of income it is readily apparent Defendant for several years has made a living from his criminal activities. The evidence indicates Defendant has been earning a living for almost two decades by engaging in illegal activities. Further, Defendant admits he has a long history of alcohol abuse and addiction to illegal drugs.

Taking into account Defendant's poor educational background, his lack of a substantial work history, his history of supporting himself through criminal activities, and his history of drug abuse, the Court concludes Defendant presents a very high risk of recidivism. Defendant has been successful in obtaining sufficient money to support himself for many years through illegal means. His drug problem requires him to obtain money. He has no skills nor work history that would make him attractive to any employer. Therefore, it is unlikely he will be able to gain meaningful employment in the foreseeable future. With this background a return to crime is probable. Accordingly, the Court determines it is in society's best interest for the Court to impose a sentence of incarceration that will serve to protect society from Defendant's future crimes.

### 3. Needed Medical Care & Rehabilitation

Defendant admits to abusing alcohol and several illegal drugs. In fact, he wrote a letter to the Court prior to sentencing explaining he has a drug problem and his criminal activities supported his addiction to drugs. Thus, the Court deems it important to impose a sentence that allows Defendant to be incarcerated long enough to receive needed treatment for his drug addictions to increase the chance of rehabilitation. Further, an adequate sentence is needed to impress upon Defendant the necessity of ceasing his criminal behavior and to start a new life as a productive citizen.

### 4. Criminal Livelihood

As already mentioned, it is obvious to the Court Defendant has made a living from his criminal activities for several years. This factor is not taken into consideration under the Guidelines. However, the Court took this factor into consideration in determining what the appropriate sentence in this case should be. As stated previously, the risks of recidivism are greater with a defendant that has earned his living for many years by engaging in criminal behavior.

### 5. Deterrence and Retribution

The Court is mindful a sentence is needed that will incapacitate Defendant from breaking the law in the near future and will serve to deter others from committing the same crimes. Finally, a sentence is needed that will adequately punish Defendant for the crime he pleaded guilty to committing.

### D. Appropriate Sentence

After consulting the Guidelines and considering the factors set forth in § 3553(a), the Court believes the sentence it imposed was the appropriate sentence.

However, had the Court determined the Guidelines calculation was different, the Court would still have imposed the same sentence because of the nature and circumstances of the offense; the history and characteristics of Defendant; the need to protect the public, rehabilitate Defendant, and to provide Defendant with needed treatment; to take into account the fact Defendant has made a living by engaging in criminal activities; to deter Defendant and others from committing similar crimes; and to provide a just punishment.

### III.   CONCLUSION

For the reasons stated above and at the sentencing hearing, the Court concludes the sentence it imposed on March 10, 2006 of 48 months imprisonment and $67,013.87 in restitution was sufficient but not greater than necessary to meet the statutory goals and is a sentence that will best serve the interest of justice.

**SO ORDERED.**

**ENTER:**

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**